EUNICE E. FRAZIER, Appellant, v. THE CITY OF ROCKPORT, THE MAYOR, THE BOARD OF ALDERMEN thereof, and the WESTERN STATES CONSTRUCTION COMPANY, a Corporation, Respondents.

Kansas City Court of Appeals, April 1, 1918.

1. **TAXBILLS: Equity: Injunction.** In the absence of statutory provision requiring each street in a city to be treated as a single separate improvement, many streets and parts of streets may be embraced in one plan or scheme of public improvement, if in fact they can all be regarded as parts of the same improvement. The extent of such improvement and what shall be included in it, and its nature and character, are within the legislative discretion of the City Council, and a court of equity will only interfere to correct a clear abuse of the discretion.

2. ———: **Municipal Corporations: Public Improvement of Streets: Connecting Streets.** To require each street of a city to be treated

as one improvement and the property fronting on that street to participate only in the cost of improving it would lead to great difficulties, often forbidding an improvement entirely, or rendering it inadvisable unless adjacent streets were similarly improved and the whole done as one improvement.

3. ————: **Front Foot Rule.** Under the "front foot" rule each lot abutting on public streets in a city must bear its proportionate share of the entire cost necessary to improve all the streets embraced within the plan or scheme of improvement and not the mere cost of the portion in front of it.

4. ————: **Engineer's Estimate: Lump Sum.** Where the engineer's estimate of the cost of public improvement of streets is in a lump sum and not itemized as by unit measure, but expressly refers to the plans and specifications and states that the estimate is according to them, so that taking the ordinance, the plans and specifications and the estimate together, there would be shown all the information that a detailed and itemized estimate would reveal, such estimate is sufficient.

5. ————: **Ordinances: Advertising of Bids: Clerical Error.** An ordinance, directing a city engineer to advertise for bids for public work and providing that the "highest" bid be accepted is not vitally defective where there is no showing that the use of the word "highest" instead of "lowest" had any effect upon the number of bidders or upon the bids made, the entire bidding being advertised and carried out on the theory that the lowest competitive bid was sought and the contract eventually let to the lowest bidder.

6. **FOREIGN CORPORATIONS: License to do Business: Contracts.** A contract entered into in this State by a foreign corporation not authorized to transact business in this State is not void where the company complies with the statutes of this State before any attempt is made to perform said contract (following Wulfing v. Armstrong Cork Co., 250 Mo. 723).

Appeal from Atchison Circuit Court.—*Hon. John M. Dawson,* Judge.

AFFIRMED.

*Edward G. Frazier* for appellant.

*William C. Ellison* for respondent.

TRIMBLE, J.—Plaintiff brought a bill in equity to enjoin the execution of a contract made by the city

196 Mo. App.—6

authorities of Rockport, a city of the fourth class, with the Western States Construction Company for the making of a certain public street improvement, theretofore authorized, payment for which was to be made by special assessments levied upon the tracts of real estate abutting upon and benefited by the said improvement. Plaintiff, as the owner of one of these tracts, is directly interested in and affected by said contract and is, therefore, entitled to ask a court of equity to pass upon the validity thereof.

A demurrer to the bill was interposed and sustained, whereupon plaintiff stood upon her bill and appealed.

As the demurrer admits all the facts alleged and properly pleaded in the bill, we must look to it for the facts upon which the case rests. From the statements therein contained it appears that the legislative authorities of said city deemed it necessary that a number of streets and portions of streets, all carefully and explicitly designated, and connected together so as to form one continuous improvement of the same character throughout, should be brought to the established grade and then curbed and guttered so as to make the improved part of the said streets of certain specified widths and of a smooth and even finished surface and such as would permit the drainage of water on the improved portion of said streets into said gutters. In accordance therewith, said legislative authorities enacted the necessary ordinances and resolutions, expressing such necessity and providing for the proposed improvement. The various steps required by law to effectuate this purpose were taken and the proceedings culminated in the advertising for bids for the work, and the acceptance of the bid of the Western States Construction Company as the lowest and best bid. The city executed a contract pursuant to said bid, and the same was about to be put into effect when further proceedings were suspended by the institution of this suit.

It is unnecessary to set forth in detail the necessary ordinances, resolutions, adoption of plans and specifications, the filing of the engineer's profiles, esti-

mates, etc., and the other procedure required to authorize a municipal street improvement, since, in the absence of a particular challenge thereof by the allegations of the bill, it will be presumed that the municipal authorities complied with the statutory requirements.    And, indeed, the bill herein seems to concede, impliedly if not expressly, that all the various steps were taken and are in proper form and valid except in respect to the specified particulars hereinafter mentioned. Aside, then, from the particular complaints and objections leveled by the bill against the legality of the contract and proposed improvement, we assume that the city authorities have the power to provide for the construction of the public improvement aforesaid and for the payment by special assessments on their property abutting upon the    proposed    improvement    and    benefited    thereby. [Barber Asphalt Paving Co. v. Ullman, 137 Mo. 543, 568; City of Excelsior Springs v. Ettenson, 120 Mo. App. 215.]

The first objection in plaintiff's brief against the validity of the contract and in support of her bill to enjoin its execution, appears to have two branches: First, that since the proposed improvement covers a number of streets and parts of streets, it cannot be regarded as one improvement, no matter what the circumstances are and notwithstanding the recitals in the ordinances and resolutions that it is one improvement and that it is necessary to be dealt with as one improvement; second, that as the streets are to be improved to different widths and, in being brought to grade, will have to be excavated to varying depths at different places, and since the estimate of the cost of the entire improvement filed by the city engineer is in a lump sum and not according to the unit measure— i. e., by the cubic yard or lineal foot, there is no way by which the cost of that part of the improvement to which plaintiff's property really belongs, and only for which it should be assessed with its *pro rata* share, can be ascertained.

With reference to the first branch of this objection, it should be observed that there are no allegations of fact in the bill which show that, notwithstanding the declarations in the ordinances to the contrary, the improvement proposed is in reality more than one improvement, or that it would be inequitable, unjust, or a fraud upon plaintiff to require plaintiff's property to contribute its *pro rata* share of the cost of improving the specified streets as one single and entire improvement. The bill alleges that Rockport, the county seat of Atchison county, has a population of 1200, that none of its streets are paved, macadamized, curbed, or guttered. And while it alleges that the station of its one railroad is about three-fourths of a mile from the principal business portion of the town and that they are connected by one continuous street, called Main street, which runs north and south through the entire corporate limits of the city, and that the court-house, the high school, the station, and the several churches are separated from one another by distances varying from two to sixteen city blocks, and further alleges certain other statements as to the topography of the city, yet the petition admits that all of the above named public places of the city "are connected by public streets of said city within the limits of the proposed improvement." The petition elsewhere again concedes that all parts of said proposed street improvement are connected together so as to form a continuous line of improvement of the same material and character throughout and that each piece of property within the district to be improved is connected thereby with every other piece and with the high school, churches, business section and railroad station, and the streets proposed to be improved parallel and cross each other in such manner as to form blocks and squares. And the objection seems to rest upon the bare fact that the streets constitute such a large portion of the town, and upon the further fact that the filling and excavating to be done according to the plans and specifications vary materially in quantity

throughout the line of the proposed improvement, being more on some streets and less on others.

There are, therefore, no *facts* alleged in the petition which show, or which will enable the court to say, that the city authorities have declared that to be one improvement which is in fact more than one; while, on the contrary, the facts that are stated seem to indicate that the improvement is in fact one improvement and necessary to be treated as such as declared by the authorities in their various enactments. In Church v. People, 53 N. E. 554, 555, it is said:

"The extent of an improvement, and what shall be included within it, rests in the legislative discretion of the city council, and the courts will interfere only to correct a clear abuse of the discretion. [Davis v. City of Litchfield, 145 Ill. 313, 33 N. E. 888.] If it appears an ordinance provides for two separate and distinct improvements, the making of one of which could not reasonably be said to benefit property situated upon the other, the combination of the improvements would be regarded as a clear abuse of such discretion."

In City of Springfield v. Green, 120 Ill. 269, 273, the court in meeting a charge that the city authorities had embraced in one enterprise more than one improvement, said:

"While many streets and parts of streets are embraced in the scheme of improvement adopted by the city, yet we regard them all as but parts of the same improvement. The city authorities, in adopting the ordinance, must have found, as a matter of fact, that these streets and parts of streets were so similarly situated, with respect to the improvement proposed to be made, as to justify treating them as parts of a common enterprise and single improvement, and from the record before us we think they were justified in doing so. They were all to be paved with the same material and in the same way, and the fact that there was a difference of a few feet in the width of some of them, and that the cost of paving the railway tracks in others was to be excluded from the estimate, should,

in our opinion, make no difference in this respect. The similarity of the improvement proposed to be made, and the situation of the property to be assessed, with respect to it, afford a more satisfactory test as to whether they might all be embraced in a common scheme as one improvement, than their actual connection or physical contact with one another."

In 2 Elliott on Roads and Streets (3 Ed.), sec. 694, it is said:

"Improvements are not, however, necessarily distinct and different because different roads or different streets are included, for it may well be that the system is a single and uniform one, although it embraces more than one street. If, in fact, the improvement is a unity, an assessment may be valid, although it embraces in its line more than one street or road. It may often happen that in order to secure a complete and effective system it is necessary to construct a main line with branches, or to improve two or more streets at once so as to secure a uniformity of grade, and in these, or similar instances, there is no reason why the system may not be considered as a single improvement, except, of course, where the statute supplies a reason for a different rule." [See, also, Lewis v. Albertson, 53 N. E. 1071, 1074; Davis v. Litchfield, 33 N. E. 888, 891; 28 Cyc. 972.]

There is no provision in the statute requiring each street to be treated as a single and separate improvement. Many streets and parts of streets may be embraced in one plan or scheme of improvement if in fact they can all be regarded as parts of the same improvement. The extent thereof and what shall be included in it, and its nature and character, are within the legislative discretion of the city council, and the courts will interfere only to correct a clear abuse of the discretion. [People v. Latham, 67 N. E. 403, 406.] The mere fact that more than one street was included in one proceeding was not regarded as fatal in the following Missouri cases, to-wit: Seibert v. Cavender, 3 Mo. App. 421, involving the curbing, grading, guttering and macadam-

izing of about twenty streets, and Wills v. Burbank, 182 Mo. App. 68, where three streets were included in one improvement. As a practical matter, to require each street to be treated as one improvement and the property fronting on that street to participate only in the cost of improving it would lead to great difficulties, often forbidding an improvement entirely or rendering it inadvisable unless adjacent streets were similarly improved and the whole done as one improvement. Especially is this true in country towns in circumstances where the embracing of several streets in one scheme of improvement benefits every piece of property abutting upon any of the streets so improved, and it is only in this way that the improvement can be had. We are of the opinion that in the absence of any facts showing that the proposed scheme should not be regarded as one improvement or that the council has abused its discretion in the matter, the courts should not interfere; in the absence of a statute forbidding the inclusion of several streets in one proceeding.

If the proposed scheme can properly be regarded as one improvement, then, in theory at least, there is a special benefit accruing to all the property abutting upon the improved streets and flowing from the improvement as a whole. [People v. Latham, supra.] And under the "front foot" rule in this State each lot should bear its proportionate share of the entire cost and not of the mere cost of the portion in front of it. [Municipal Securities Co. v. Metropolitan St. Ry. Co., 196 S. W. 400 402; McQueen v. Van Deusen 189 Mo. App. 492, 499.] This, it would seem, also meets the objection that the engineer's estimate of the cost should have been by the unit measure instead of in a lump sum, since there is no reason for ascertaining the cost of each street or of keeping that separate from the entire cost. The petition sets forth the engineer's estimate and it shows that it was made after the plans and specifications were filed and after they had been approved and adopted by the city. Section 9410, Revised Statutes 1909, provides that when the improvement in-

cludes the bringing of the street to grade, the whole work shall be let under one contract. Section 9407 provides that an estimate of the cost of the whole work shall be made before any contract shall be let "and no contract shall be entered into for any such work or improvement for a price exceeding such estimate." There is nothing requiring an itemized or detailed estimate, the only requirement being that the Board of Aldermen shall know in advance what the whole cost is and shall not make a contract in excess of the estimate. If the estimate had been by the unit measure, then even though a total cost were mentioned, reference would have to be made to the plans and specifications to ascertain and verify the true total cost. The only purpose of the statute being to restrict the contract price to the estimated cost, we see no use in requiring an itemized estimate, at least none so vitally necessary as to render void an estimate which did not give the cost in items. The engineer's estimate expressly refers to the plans and specifications and says the estimate is according to them. So that taking the ordinances, the plans and specifications and the estimate together would furnish all the information that a detailed and itemized estimate would reveal. The estimate was sufficient. [City of Independence v. Briggs, 58 Mo. App. 241; McChesney v. Chicago, 152 Ill. 543.] "In the absence of a statute requiring a detailed estimate, a gross estimate is generally held to be sufficient." [1 Elliott on Roads and Streets (3 Ed.), sec. 613.]

It seems that the ordinance, which directed the city engineer to advertise for bids, provided in section 4 thereof that the "Mayor and Board of Aldermen may by ordinance accept the highest bid, if made in conformity with this ordinance and said plans and specifications." It will be observed that the word "highest" was used instead of the word "lowest." The petition discloses, however, that the defendant, the Western States Construction Company, *and others* submitted bids, that the bid of the above-named defendant was the *lowest* did and was found by the Board to be the

lowest and best bid and was so declared to be by ordinance. The use of the word "highest" was, under these circumstances, a mere clerical error. No facts are alleged to show that it had any effect upon the number of bidders or upon the bids made, and the entire bidding was advertised and carried out on the theory that the lowest competitive bid was sought, and the bidding was made and the contract awarded in accordance with the law, that is, to the lowest and not to the highest bidder. Under these circumstances we do not see wherein the above-named obvious clerical defect in the ordinance creates any vital defect. [Maret v. Hough, 185 S. W. 544.]

The defendant, Western States Construction Company, is a Nebraska corporation, and up to the time of entering into the contract with the city and filing its bond for the proper performance of the work, it had not complied with the provisions of our statutes authorizing it to "do business" within this State. However, as soon as these things were done, and before undertaking to perform any part of the work under the contract and before the suit was brought, the said defendant complied with said statutes. The question is whether the mere execution of the contract and bond before complying with our statutes renders the contract void, notwithstanding the fact that as soon as the contract was executed and before any attempt was made to perform anything thereunder, the company duly complied with our statutes? The case of Hogan v. City of St. Louis, 176 Mo. 149, clearly holds that our statutes do not mean that the company must obtain a license to do business here before it can lawfully enter into a contract in this State to do any business herein; that "the obtaining of a desirable contract is sometimes an inducement for a foreign corporation to come into the State; it is not bound to establish itself here before it can obtain such a contract." Plaintiff contends that this decision is in effect, though not in terms, overruled by the case of Tri-state Amusement Company v. Forest Park, etc., Co., 192 Mo. 404. It may be conceded

that the general language used by Judge MARSHALL in several places in that opinion is susceptible of this interpretation. And we might so hold were it not for the decision in Wulfing v. Armstrong Cork Co., 250 Mo. 723. That case quotes the Hogan case upon the precise point involved herein and follows the principle therein enunciated. It being a later and the last expression of the Supreme Court on the subject, we follow it.

Believing that the allegations of the bill do not present a situation wherein the court is justified in interfering with the discretion of the city authorities, and that none of the other objections against the validity of the contract are sufficient to destroy it, we are of the opinion that the demurrer was properly sustained. Wherefore, the judgment is affirmed. All concur.