(No. 5813.   June 27, 1932.)

PEOPLES–PITTSBURG TRUST COMPANY, a Corporation, Appellant, v. J. R. DIEBOLT and MARY M. DIEBOLT, Husband and Wife, Respondents.

[13 Pac. (2d) 656.]

Richards & Haga, for Appellant.

E. M. Wolfe, Ray D. Agee and E. L. Rayborn, for Respondents.

GIVENS, J.—The Twin Falls Salmon River Land & Water Company, a Carey Act construction company, in 1908

issued some $1,735,000 of bonds under a trust deed to the American Trust & Savings Bank of Chicago, Trustee, with which, water contracts were deposited as collateral security. The bonds became delinquent in 1913, whereupon a bondholders committee was organized to represent and protect the interests of all the bondholders. In 1914, the trusteeship was transferred to the Commonwealth Trust Company of Pittsburg, and the bonds deposited with the Safe Deposit & Trust Company of Pittsburg as depository. Later the name but not the legal entity of the last concern was changed to Peoples Savings & Trust Company, and later to Peoples-Pittsburg Trust Company, appellant herein.

May, 1921, the Bondholders Committee borrowed $300,000 from a Chicago syndicate, having the Twin Falls Salmon River Land & Water Company issue its notes for that amount, the Bondholders Committee guaranteeing this loan and pledging the above bonds as security, the appellant acting as trustee in the transaction. At the foreclosure of the 1908 trust deed, in September, 1921, the securities were purchased for the Bondholders Committee by appellant; all contracts and securities were then assigned to appellant and substituted for the bonds held as security. The $300,000 of notes were paid by September 20, 1922, canceled and surrendered, and appellant contends its duties as trustee in connection with the $300,000 loan thereby terminated and that thereafter it had no connection with respondent or the Bondholders Committee so far as doing business in Idaho was concerned. Conceding that the trust as to the $300,000 loan in Chicago had so terminated, the above history is pertinent as bearing on the subsequent relationship of the parties.

About 1921, Murray Brookman became the sole representative of the Bondholders Committee to handle all its affairs in Idaho, and thereafter received three appointments as attorney-in-fact from and for appellant; July 14, 1922, October 18, 1922, and August 2, 1924, respectively, the latter granting him power to "act generally as its attorney in relation to all securities held by said Peoples Savings &

Trust Company upon all lands, commonly designated as The Twin Falls Salmon River Land & Water Company project, located in Twin Falls County, State of Idaho, and in all matters in connection with said lands in which said Peoples Savings & Trust Company may be interested or concerned, and in its behalf to execute all such instruments, and do all such acts and things as fully and effectually, in relation to all interests that said Peoples Savings & Trust Company may have in and to said lands included within said Twin Falls Salmon River Land & Water Company project, and any and all securities appertaining thereto, in all respects as said Peoples Savings & Trust Company could do itself, and to endorse, assign, release, transfer and convey, any and all notes, together with the mortgages securing the same and any and all water contracts and any and all other evidences of interest in or encumbrance upon any lands located within said Twin Falls Salmon River Land & Water Company project, and said Peoples Savings & Trust Company does by these presents and for its successors and assigns, hereby ratify and confirm all acts and things heretofore done by said Murray Brookman, in the name or in behalf of said Peoples Savings & Trust Company, in relation to any of its interests in the lands within said Twin Falls Salmon River Land & Water Company project and in relation to any and all mortgages, notes, water contracts and other evidences of interest in or encumbrance upon any lands within said Twin Falls Salmon River Land & Water Company project, and said Peoples Savings & Trust Company does hereby ratify and confirm all that its said attorney may lawfully do in the premises.''

Respondents, husband and wife, were settlers on the Twin Falls Salmon River Land & Water Company tract, obligated on a water contract to said company, and March 9, 1926, the acreage of the project having been greatly reduced because of an inadequate water supply, as the result of a settlement of their indebtedness thereunder, gave appellant a mortgage on their lands, securing a note dated

March 6, 1926 (interest commencing January 5, 1926, that being the date of the settlement), due in three years. Appellant sued herein to foreclose said note and mortgage. The sole defense is that appellant when it received the note and mortgage, and prior and subsequent thereto, has been a foreign corporation doing business in the state without having complied with Constitution, art. 11, sec. 10, and C. S., secs. 4772, 4775, 4776, and hence is barred from so suing, and the trial court so found as a fact.

The sole question is whether there is sufficient evidence to sustain such finding.

It is conceded appellant did not comply with the above statutes or become authorized to do business in the state until March 24, 1926.

There is not so much a conflict in the testimony as there is conflict in the conclusions drawn therefrom by appellant and respondent. Appellant contends the mortgage was not completed until March 24, 1926, hence no business done until then, because when made March 6th, the title was to be perfected, which was not done until March 24th. This contention is untenable, because appellant's own witnesses stated the mortgage was taken March 6th for protection against otherwise possible intervening liens. Thus it was clearly the intention and purpose of appellant that the mortgage should operate and be effective as such from its inception, not from the time the title was accepted. If appellant wanted and accepted the mortgage as giving it protection, it must assume the corresponding burdens and reciprocal responsibilities. What might have been the effect if the title had not been made good and the mortgage released, we need not consider under the facts herein.

Appellant strenuously insists that appellant was the agent of the Bondholders Committee, charged as a naked, dry trustee only with the duty of safely keeping the securities. If the appellant was thus charged, and performed without doing business in connection therewith in Idaho, its

only duty was to safely keep these securities, necessarily in Pittsburg or at least outside the state of Idaho.

The record shows that many mortgages of similar kind were taken by Brookman as agent for the Bondholders Committee and attorney-in-fact for appellant in the state, never were out of Brookman's possession, were never safely or otherwise kept in Pittsburg; that lands taken over on similar mortgages standing in the name of appellant were leased by Brookman; that stock was transferred by Brookman in at least one instance to an individual in Idaho so he could qualify as a stockholder and director in the Twin Falls Salmon River Land & Water Company. Appellant contends it had Brookman as attorney-in-fact in Idaho only for convenience so it would not be necessary to send the various papers, documents and instruments involved in settling the affairs of the Twin Falls Salmon River Land & Water Company, and Bondholders Committee, to Pittsburg for appellant's officers to sign. Such situation shows that whatever connection appellant had with these transactions, the activities of Brookman as attorney-in-fact for appellant were *not incidental* to appellant's business with the Twin Falls Salmon River Land & Water Company or Bondholders Committee, but that for some time prior to and during the time the mortgage was given all the business appellant did in this connection was handled in Idaho. If incidental, incidental to what—holding title and safekeeping? This was, as shown by the record, in large part done in Idaho.

Brookman as attorney-in-fact for appellant in Idaho, as a general course of dealing, not in a single isolated instance, executed assignments, received mortgages, took deeds, sold lands, leased lands, *as a convenience* handled and reconveyed lands, received payments and forwarded them to appellant, and paid expenses from the funds received (Brookman testified this was done as agent for the Bondholders Committee and that he never accounted to appellant for these moneys, but he forwarded some funds to appellant); all after 1922.

Prior to the powers of attorney, releases of water contracts had to go to Pittsburg for execution; after the powers were issued this work was done in Idaho.

Appellant says, page 45 of his brief: "Obviously, if there was any agency the Committee was the principal and the Trust Company was the agent." Granted; then either Brookman as agent of the Bondholders Committee, *cestui que trust,* acted as agent for appellant, or Brookman directly, as agent for appellant, did the acts detailed, since to perfect the deals, compromises, settlements, etc., these acts were necessary as acts of appellant and were performed here, hence were the business of appellant.

Appellant also instituted suits as stated, for convenience—convenience of whom? Robinson, an official of appellant and member of the Bondholders Committee, said:

"While the Company held the legal title to and possession of the assets or water contracts, it became necessary for it to make releases of the lien evidenced by the contracts as the Committee from time to time made adjustments with the settlers and as a convenience to the settlers, as well as the Committee, the Peoples Savings and Trust Company gave a power of attorney to execute releases of water contracts to Mr. Murray Brookman, who was the agent and representative of the Committee in Idaho. *This obviated the necessity of sending to Pittsburg for releases of water contracts.* It later and for like reasons gave Mr. Brookman a power of attorney to assign notes and mortgages taken in the name of the Company but in which it had no financial interest. These securities were all the property of the Bondholders' Protective Committee." And: "The Peoples Savings and Trust Company of Pittsburg transacted no business in connection with the Salmon River project except in its office in Pittsburg, *and that business consisted simply of executing documents* requested by Bondholders' Committee or by me as Chairman of that Committee." (Italics ours.)

The business may have been simple, but he himself stated it was business, and that done by Brookman intrastate, and

completed by Brookman in Idaho as agent for appellant, with full authority for that purpose.

*Broadway Bond St. Co. v. Fidelity Printing Co.,* 182 Mo. App. 309, 170 S. W. 394, is a typical case cited to the proposition that a dry, naked trustee in the execution of such a trust is not doing business. A careful reading of that case and similar authorities shows that appellant carried on in Idaho through its attorney-in-fact many more activities than were held in such authorities to fall short of doing business. (See, also, 39 Cyc. 30; *Henderson v. Henderson,* 210 Ala. 73, 97 So. 353, at 365; *Randolph v. Read,* 129 Ark. 485, 196 S. W. 133, at 135; *Morgan v. Ice,* 80 W. Va. 273, 92 S. E. 340.)

The various things done by appellant in Idaho through Brookman, its attorney-in-fact, all as shown by appellant's own witnesses, disclose a course of action that warranted the trial court in concluding it was doing business. As stated in *Portland C. L. Co. v. Hansen L. & F. Co.,* 43 Ida. 343, 251 Pac. 1051:

"From our investigation of the authorities upon the question of when a foreign corporation is doing business within a state it is apparent that each case must be decided upon the particular facts and circumstances entering into the transaction. The authorities upon the question are irreconcilable. Courts of great respectability invoke a liberal construction in the interpretation of such restrictive statutes, while other courts of like eminence apply a rule of strict construction."

It is to be noted that the activities of appellant herein greatly exceeded those of the foreign corporation in the quoted case.

Though we have carefully examined them, it is unnecessary to review the authorities cited by both parties, because while individual cases point out certain particular acts as not sufficient to amount to doing business, when all the above transactions shown herein are considered together, conceding that appellant was only a safekeeping title hold-

ing concern, and authorized to engage in such activities, the composite reasonably leads to the conclusion that appellant was doing business, and such conclusion is supported by these authorities: *Hoffstater v. Jewell,* 33 Ida. 439, 444, 196 Pac. 194, in which it is said:

" . . . . The constitution prohibits the doing of any business in the state without compliance with its provisions. . . . .

"In dealing with the land in question, the G. W. Randall Company was doing that for which it was created, and in part at least that which it was especially organized to do. The transactions which it performed cannot be said to be single or isolated; neither were they casual or incidental."

*Colonial Trust Co. v. Montello Brick Works,* (C. C. A.) 172 Fed. 310; *Pennsylvania Co., etc., v. Bauerle,* 143 Ill. 459, 33 N. E. 166; *Farmers' Loan & Trust Co. v. Lake St. El. R. Co.,* 173 Ill. 439, 51 N. E. 55; *Adjustment Bureau, etc., v. Conley,* 44 Ida. 148, 153, 255 Pac. 414, where the court used the following language:

"The general doctrine, as laid down in Thompson on the Law of Corporations (section 7936) is: 'The general conclusion of the courts is that isolated transactions, commercial or otherwise, taking place between a foreign corporation domiciled in one state and citizens of another state, are not a doing or carrying on of business by the foreign corporation within the latter state, *but that these prohibitions are leveled against the act of foreign corporations* (italics ours) *entering the domestic state by their agents, and engaging in the general prosecution of their ordinary business therein.' "*

Not that appellant was doing a collection business as in the quoted case, but what business it did for, or in connection with, the Bondholders Committee or Twin Falls Salmon River Land & Water Company, it did in part in Idaho.

Nothing herein said is to be taken as bearing on what, if any, rights the Bondholders Committee may have as

against respondents. (*Donaldson v. Thousand Springs Power Co.*, 29 Ida. 735, 162 Pac. 334.)

Judgment affirmed. No costs awarded.

Budge, Varian and Leeper, JJ., and Sutton, D. J., concur.

Petition for rehearing denied.