[Civ. No. 9290.   Third Dist.   June 16, 1958.]

CLAIR A. HILL, Appellant, v. ROBERT C. KIRKWOOD, as State Controller, etc., et al., Respondents.

Rowland & Paras for Appellant.

Edmund G. Brown, Attorney General, Leonard M. Friedman, Deputy Attorney General, Robert E. Reed, Warren P. Marsden, Tuttle, Tuttle & Taylor and Henry P. Buckingham for Respondents.

WARNE, J. pro tem.*—This is an appeal from a judgment entered for defendants in a taxpayer's suit to enjoin the defendant officers of the State of California from paying co-defendant, Hycon Manufacturing Company, the contract price for furnishing to the Department of Public Works, Division of Highways, photogrammetry contour maps and other related work as called for by the terms of their contract.

After notice to bidders requesting proposals the Division of Highways, Department of Public Works, awarded Hycon Manufacturing Company, a Delaware corporation, Aerial Survey Contract Number 96 for the sum of $6,111. Plaintiff as a taxpayer brought this action to enjoin payments under said contract by the defendant officers of the state, and alleged that said contract was illegal and void for the reason that Hycon Manufacturing Company was not registered as a civil engineer or licensed as a land surveyor under the applicable provisions of the Business and Professions Code; that the specifications, particularly sections 8 and 9, for said contract, were embraced within the definitions of land surveying and civil engineering as defined in sections 6731, 8725 and 8726

---

*Assigned by Chairman of Judicial Council.

of said code; and that said contract was not exclusively for aerial photography or photogrammetry.

The contract called for the furnishing of photogrammetry, contour maps and other related work in Humboldt County from Fortuna northerly a distance of about 7.5 miles; scale 1 inch equals 100 feet, 5 feet contours. Section 2 provided that the work was to be done in accordance with the Revised General Specifications for Photogrammetry of the Department, dated February, 1954, and in accordance with general specifications, special provisions, and a set of maps incorporated therein. Section 8 of the special provisions for said contract required the contractor to prepare and furnish contour maps laid out in rectangular coordinates expressed on the California Coordinate System, to label the coordinate values on the margin of the map sheets, to identify on the maps all grid positions, horizontal control monuments, bench marks, contours, the grid system and all topographic and planimetric features, together with the north points, magnetic declinations, grid declinations and the location of building and spot elevations. Section 9 of said special provisions required said contractor to do certain ground control work, including the establishment of all necessary and required horizontal and vertical controls in the field, and to make ground surveys necessary to fulfill the horizontal and vertical accuracy requirements for the contour maps to be furnished, and further required the contractor to furnish certain data on ground control, including field survey notebooks, calculation and tabulation of control data and a control diagram.

The pertinent findings of fact were as follows:

(1) Defendant Hycon Manufacturing Company is neither a registered civil engineer nor a licensed land surveyor.

(2) That said contract required defendant Hycon Manufacturing Company to furnish topographic maps prepared by the process known as aerial photogrammetry. The maps actually compiled and furnished by it were entirely prepared by means of said process. The principal portion of said process consists of aerial photography of the terrain to be mapped and a map compilation of said aerial photographs through the use of photogrammetric plotting machinery. A map compilation through the use of said machinery does not, and in the case of said contract did not, require the measurement of any angles or the application of principles of trigonometry except to the extent necessary to supply "ground control" data as hereinafter found. In the compilation of

said topographic maps, the optical and mechanical design of the photogrammetric plotting machinery and the operation of optical and mechanical controls and mechanical tracing devices rendered unnecessary the conventional method of measuring lines and angles and of applying trigonometric principles.

(3) That the photogrammetric mapping required under said contract did require the use of conventional land surveying methods for the ascertainment of "ground control" data, except to the extent to which such data is furnished by or is available from previous recognized surveys, such as those made by the United States Coast and Geodetic Survey. As required by said contract, defendant Hycon Manufacturing Company established control monuments and bench marks by conventional land surveying methods and prepared and furnished field survey notebooks, calculation and tabulation control data, and control diagrams; but the activities and operation of Hycon Manufacturing Company necessary to perform such work were and are an integral and necessary part of the "ground control" phase of preparing topographic maps from aerial photographs through photogrammetry; that all such ground control work was exclusively for photogrammetry and did not involve or require the determination of any property line.

(4) In the preparation of said maps under said contract defendant Hycon Manufacturing Company was not required to and did not do any of the acts constituting land surveying as provided in section 8726, subdivisions (a), (b), (c), (d), (e) or (f) of the California Business and Professions Code.

(5) That defendant Hycon Manufacturing Company did determine information to be shown on certain documents prepared and furnished in connection with the function of determining the position of fixed objects on the earth's surface by means of measuring lines and angles and applying the principles of trigonometry, but all such determinations were made exclusively for aerial photography and photogrammetry and did not involve the determination of any property line.

Section 8726 of the Business and Professions Code provides:

"A person practices land surveying within the meaning of this chapter who, either in a public or private capacity, does or offers to do any one or more of the following:

"(a) Locates, relocates, establishes, re-establishes, or re-traces any property line or boundary of any parcel of land or any road, right of way, easement, alignment or elevation

for any of the fixed works embraced within the practice of civil engineering, as described in Chapter 7, Division 3 of this code.

"(b) Makes any survey for the subdivision or resubdivision of any tract of land.

"(c) By the use of the principles of land surveying determines the position for any monument or reference point which marks a property line, boundary or corner, or sets, resets or replaces any such monument or reference point.

"(d) Determines the configuration or contour of the earth's surface or the position of fixed objects thereon or related thereto, by means of measuring lines and angles, and applying the principles of trigonometry.

"(e) Geodetic or cadastral surveying.

"(f) Determines the information shown or to be shown on any map or document prepared or furnished in connection with any one or more of the functions described in subsections (a), (b), (c), (d) and (e).

"(g) Indicates, in any capacity or in any manner, by the use of the title 'Land Surveyor' or by any other title or by any other representation that he practices or offers to practice land surveying in any of its branches.

"(h) Procures or offers to procure land surveying work for himself or others.

"(i) Manages, or conducts as manager, proprietor, or agent, any place of business from which land surveying work is solicited, performed or practiced."

Under the provisions of section 6787 of the same code, it is unlawful for any person "Who, unless he is exempt from registration under this chapter, practices or offers to practice civil engineering in this State according to the provisions of this chapter without legal authorization."

And under the provisions of section 8731:

"A registered civil engineer and a civil engineer exempt from registration under Chapter 7 of Division III of this code are exempt from licensing under this chapter and may engage in the practice of land surveying with the same rights and privileges, and the same duties and responsibilities of a licensed land surveyor."

█ It is plaintiff's first contention that since the photogrammetry contract called for and required the doing of conventional surveying by conventional methods and instruments, it constituted land surveying which could only legally have been done by a licensed surveyor or civil engineer. We

do not agree with this contention. There is substantial evidence to sustain the court's findings. Section 8 of the special provisions of the contract heretofore quoted did not require the practice of land surveying under subdivisions (a), (c), and (d) of section 8726, other than the ground control work under section 9, and the ground control work under section 9 was exclusively for and an integral part of the production of aerial photographs and photogrammetry. It did not involve the determination of any property line and is clearly exempt under the provisions of section 8727 of said code, which provides:

"Surveys, made exclusively for geological or landscaping purposes or aerial photography or photogrammetry and not involving the determination of any property line, do not constitute surveying within the meaning of this chapter."

Neither the general specifications nor the special provisions of the contract in question require any deviations from photogrammetric mapping procedures and techniques. It appears that the ground control phase in the process of the photogrammetric method of mapping involves the determination of horizontal and vertical positions of a defined set of control points in the area which is to be photographed with an aerial camera. Such control points must be of such a nature that they can be positively identified in the aerial photographs. Ground control ordinarily utilizes the basic and accepted techniques of land surveying through the use of field crews employing such surveying instruments as the transit and stadia, level, plane table and similar devices. The control points must be selected in consultation with the photogrammetrist since they must be so located as to appear within the narrow limit in the aerial photographs. However, the photogrammetrist's selection of control points has nothing to do with the ascertainment of the elevations and distances between control points. After the ground control phase, no trigonometric or geometric calculations are involved in the process. As pointed out by respondents, section 8727 obviously contemplates that a contract for photogrammetry and not involving the determination of any property line, may provide for or require "Land Surveying" as defined in section 8726. Otherwise, there is no situation to which the exemption could apply. In other words, if a contract for photogrammetry and not involving the determination of any property line cannot provide for land surveying, the statutory exemption is meaningless.

■ The contention that section 8727 is unconstitutional as discriminatory class legislation is also without merit. As stated in *Sacramento Municipal Utility Dist.* v. *Pacific Gas & Electric Co.*, 20 Cal.2d 684, 693 [128 P.2d 529]:

". . . None of those constitutional principles is violated if the classification of persons or things affected by the legislation is not arbitrary and is based upon some difference in the classes having a substantial relation to the purpose for which the legislation was designed. [Citing cases.] A law to be general in its scope need not include all classes of individuals in the state. Nor is a classification void because it does not embrace within it every other class which might be included. [Citing cases.] Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citing cases.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it."

Applying those rules to section 8727, it cannot be said that the classification provided by the Legislature was palpably wrong and had no reasonable basis in providing that a survey made exclusively for aerial photography or photogrammetry and not involving the determination of any property line does not constitute surveying within the meaning of chapter 15 of the Business and Professions Code, since the skills and learning necessary to photogrammetric mapping are intrinsically different from those necessary to perform mapping by conventional surveying methods and are a proper basis for classification. We conclude that the contract was neither void nor illegal.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied July 9, 1958, and appellant's petition for a hearing by the Supreme Court was denied August 13, 1958.