374 P.2d 277

**AERO SERVICE CORP. (WESTERN),**
a corporation, Plaintiff,

v.

**Frank L. BENSON, Arnold Williams, Robert
E. Smylie and Joe R. Williams, Defendants.**

No. 8924.

Supreme Court of Idaho.

July 12, 1962.

Rehearing Denied Sept. 18, 1962.

Allan G. Shepard, Boise, for plaintiff.

Frank L. Benson, Atty. Gen., Wm. D. Keeton, Sp. Asst. Atty. Gen., E. G. Elliott and Thos. Y. Gwilliam, Asst. Attys. Gen., Boise, for defendants.

TAYLOR, Justice.

Upon plaintiff's petition filed in this court, alternative writ of mandate was issued directing the defendants, Frank L. Benson, attorney general, Arnold Williams, secretary of state, and Robert E. Smylie, governor, acting as the state board of examiners, to approve plaintiff's claim for services rendered pursuant to a contract entered into by the plaintiff with the state department of highways, and requiring the defendant, Joe R. Williams, as state auditor, to issue to plaintiff a state warrant for the payment of the claim, or show cause why they should not be required to do so.

After returns were filed, the court referred the cause to the District Court, in and for Ada county, for trial upon any issues of fact or law involved, or which

either party might properly raise, and directing the district judge to make findings of fact, conclusions of law, and recommendatory judgment, and return the same to this court.

After trial, the Honorable Merlin S. Young, District Judge, filed herein his findings, conclusions and recommended judgment, March 27, 1962, after which the cause was argued and submitted to this court by counsel for the parties.

It is defendants' contention that plaintiff, a foreign corporation, was not qualified to do business in the state when the contract was entered into, the work done, nor when its claims for payment were submitted; that the work done by plaintiff thereunder constituted doing business in this state; and that the contract is void and plaintiff is not entitled to payment. Defendants also contend that what plaintiff did in pursuance of the contract within this state constituted engineering and land surveying, as defined by I.C. § 54–1202; that plaintiff was not qualified to engage in either engineering or land surveying within this state; and that in so acting it violated I.C. Title 54, c. 12.

The findings of the district court are as follows:

## "I

"Plaintiff is a corporation organized under the laws of Delaware. Its purposes are 'to conduct and carry on the business of aerial surveying, photography, mapping and photogrammetry of areas, locations, sites and phenomena, * * *.' Its principal offices and permanent places of doing business are in Salt Lake City, Utah, and Philadelphia, Pennsylvania. It has never maintained any office or any permanent place of doing business in the state of Idaho.

## "II

"Plaintiff's activities are worldwide in scope, and it will, for a consideration, perform its services in all of the states of the United States and all of the countries of the world. In the past it has performed its services in all of the United States and in numerous foreign countries.

"Plaintiff qualified to do business in the state of Idaho pursuant to Section 30–501 I.C. on March 4, 1960.

## "III

"Pursuant to an invitation for proposals to do certain aerial photography and mapping by photogrammetric methods as required by the specifications of the Idaho State Highway Department * * * for Interstate Highway Project 1–80N–1(10) 25, plaintiff submitted a proposal to the State Department of Highways on June 8, 1959 * * *. This proposal led to

the execution of a contract dated July 6, 1959 between the Idaho Department of Highways and plaintiff * *. The contract calls for the production of certain aerial photographs, topographical maps and planimetric maps, profiles and cross-sections of a designated area in Idaho.

"IV

"To complete and furnish the finished photographs and maps required by the contract, it was necessary for, and plaintiff did do the following things in Idaho:

"(a) Establish ground control survey markers as required by the State Department of Highways' specifications * * *. Said work required the use of crews on the ground in the area to be aerial-photographed and mapped. Plaintiff's answers to interrogatories * * * indicate that this particular portion of the work required the services of eleven employees for approximately one month. Seven of these employees were Idaho residents and four were out-of-state employees of plaintiff.

"This work involves the location of fixed points upon the ground, to establish ground elevations and positions which are then marked so that they may be photographed from the air. By the use of special machinery at the home office, the office topographer can then, from the photographs, create topographical and planimetric maps.

"As indicated in the specifications, the party establishing the control points starts with U. S. Coast & Geodetic monuments from which bench marks, vertical and horizontal positions are determined by 'triangulation' and 'traverse,' 'spirit' levels and special instruments. The actual points thus located are basically extensions from such US&G monuments, and placed for the purposes of the topographer, to relate his aerial photo to the ground.

"This involves what is usually thought of as surveying, but does not involve the items specifically described in Section 54–1202 I.C., to-wit:

" '(c) Land Surveyor and Land Surveying. The term "land surveyor" means a person who is qualified by reason of his knowledge of the principles of surveying acquired by education and practical experience to engage in the practice of land surveying. The term "land surveying" includes responsible supervision of surveying of areas for their correct determination and descriptions and for conveyancing, or for the establishment or reestablishment of land boundaries. and the plotting of lands and subdivisions thereof.'

"(b) After establishment of the 'control points', plaintiff then flew its airplane and crew over the area to be mapped, taking aerial photographs of the area to be mapped. This required plaintiff's airplane, its crew, and special photographic equipment to be in the state for a period of five or six days. During the period of this operation, the plane landed on Idaho airports, and gasoline and aircraft supplies were purchased in Idaho.

"(c) The Permanent Survey Station Markers required by specifications Section 80 * * * as modified by the contract * * * and Change Order 3 * * *. This activity in its general nature is similar to the type of activity required for subsection (a) above, (the control points) and after the Change Order * * *, necessitated work in Idaho. The number of employees involved in the work resulting from the 'Change Order' is not clear from the evidence, nor is the amount of time involved.

"V

"All other work required of the plaintiff by the contract * * * was performed either in Salt Lake City, Utah, or Philadelphia, Pa. This constituted much the greater part of the work and consisted of processing photographs, indexing, enlarging photos, and by the use of expensive and complicated machinery creating topographic and planimetric maps therefrom. It also included the profiles and cross-sections required by the contract. The work specified in Par. III(a) and (b) involved preliminary factual determinations necessary for the actual product to be furnished by plaintiff.

"VI

"Plaintiff commenced work on the contract * * * on or about August 25, 1959 and had fully completed the contract by October 12, 1960. The time spent on work performed in the state of Idaho by plaintiff's employees during this period would not exceed sixty days.

"VII

"The product of the work done by plaintiff was topographical and planimetric maps and photographs, and did not involve any part of the actual layout, planning design or construction of Highway Project 1 80N–1(10) 25, except insofar as said maps, etc. were useful tools for the State Highway Department in their design and construction of said project. These items do not involve engineering as defined by Section 54–1202 I.C., to-wit:

"'(b) Engineering and Professional Engineering. The terms "engineer-

ing" and "professional engineering" include any professional service, such as consultation, investigation, evaluation, planning, designing, land surveying, construction, or responsible supervision of construction or operation, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works, or projects, wherein the public welfare or the safeguarding of life, health, or property is concerned or involved, when such service is rendered in a professional capacity and requires the application of engineering principles and data. The work ordinarily performed by persons who operate or maintain machinery, or equipment, is not included within the terms "engineering" and "professional engineering" as used in this act.'

## "VIII

"The plaintiff has completed and satisfactorily performed the contract * * * in all particulars, and the Idaho State Department of Highways and the State of Idaho have received and still retain all of the maps and photographs and other benefits of the contract with plaintiff and are presently using them for their design and engineering of the Highway Project in question. If the contract in question is valid, plaintiff has earned all sums due it under the terms of said contract.

## "IX

"On February 15, 1960 plaintiff made claim to the Department of Highways for payment of sums then due to it under the terms of the contract * * *; the said Department of Highways approved said claim and submitted vouchers in proper form for the payment of said claim out of funds appropriated by the State Legislature to the Department of Highways for such purposes. The defendant State Board of Examiners by a majority of its members, to-wit: Frank L. Benson and Arnold Williams, refused to allow or approve said claims."

The foregoing findings are supported by the evidence, pleadings and admissions of the parties.

▮ Idaho Code, § 30–501, requires a foreign corporation "before doing business in this state," to file copies of its articles of incorporation with the officers and in the manner required by that section in order to qualify the corporation to do business in this state. We have held many times that a contract made by a noncomplying corporation is not void, but that the effect of noncompliance is the denial of access to the courts of this state for the enforcement of the

contract, or the protection of any right arising therefrom. I.C. § 30–504; Spokane Merchants' Association v. Olmstead, 80 Idaho 166, 327 P.2d 385; Exchange Lumber & Mfg. Co. v. Thomas, 71 Idaho 391, 233 P. 2d 406; John Hancock Mut. Life Ins. Co. v. Girard, 57 Idaho 198, 64 P.2d 254; People's-Pittsburg Trust Co. v. Diebolt, 52 Idaho 208, 13 P.2d 656; Adjustment Bureau, etc., v. Conley, 44 Idaho 148, 255 P. 414; Moody v. Morris-Roberts Co., 38 Idaho 414, 226 P. 278; Weber v. Pend D'Oreille Min. etc. Co., 35 Idaho 1, 203 P. 891; Hoffstater v. Jewell, 33 Idaho 439, 196 P. 194; Katz v. Herrick, 12 Idaho 1, 86 P. 873. See also, David Lupton's Sons Co. v. Automobile Club, 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177.

■ The district court did not determine where the contract was executed. We assume, as contended by defendants, that it was executed within this state. However, the execution of the contract itself would not constitute doing business within the state: standing alone, it would constitute merely an isolated transaction, not sufficient to require compliance. Land Development Corp. v. Cannaday, 74 Idaho 233, 258 P.2d 976; Perry v. Reynolds, 63 Idaho 457, 122 P.2d 508; Frazier v. City of Rockport, 199 Mo.App. 80, 202 S.W. 266. Moreover, a contract such as here involved is not, of itself, doing business, nor is it a contract "growing out of the 'doing of business in this state,'" (Bettilyon Home Builders Co. v. Philbrick, 31 Idaho 724, 175 P. 958); rather it is an agreement to do business. 17 Fletcher, Corporations, § 8468.

■■ The major part of the work contracted to be done in the preparation of the product, which plaintiff contracted to deliver to the department of highways, was done outside the state. Its activities within the state were confined to the gathering of data necessary for processing and production of the maps which plaintiff agreed to furnish. Such activity does not constitute doing business within the state, within the meaning of I.C. § 30–501. Johnson v. Delane, 77 Idaho 172, 290 P.2d 213; Perry v. Reynolds, 63 Idaho 457, 122 P.2d 508; Ford, Bacon & Davis v. Terminal Warehouse Co., 207 Wis. 467, 240 N.W. 796, 81 A.L.R. 1127; 17 Fletcher, Corporations, § 8465. Neither did plaintiff's acts within this state constitute the practice of engineering or land surveying. I.C. § 54–1202. In Johnson v. Delane, supra, we held that the procuring of data within this state, by an unlicensed engineer, to be used in a foreign state in the preparation of plans and specifications for a commercial building to be built in this state, did not constitute the practice of engineering in this state.

■ Hill v. Kirkwood, 161 Cal.App.2d 346, 326 P.2d 599, was an action brought by a taxpayer to enjoin state officers from

paying a company for services performed under a contract with the Division of Highways. The service was similar to that performed by the plaintiff in this case. There the company did ground control work and aerial photography, which it used in the production of photogrammetric maps. It was plaintiff's contention that the company engaged in land surveying in violation of statutes requiring a licence for the performance of such work. The court rejected this contention, and held the company was not engaged in land surveying. The court quoted a provision of the California Code, § 8727, specifically exempting "aerial photography and photogrammetry and [surveys] not involving the determination of any property line." However, California's definition of "surveying", § 8726, as set out in the opinion, is much broader than the definition contained in I.C. § 54–1202. A similar exclusion would serve no purpose under our statutes, because aerial photography and photogrammetry cannot be brought within our definition of "land surveying", whereas such a contention could be made under the California definition. Nor does the establishment of ground controls constitute the determination of land "descriptions", or "the establishment or re-establishment of land boundaries", or "the plotting of lands" or "subdivisions", within I.C. § 54–1202(c).

■ Judge Young correctly concluded: "That the contract * * * made by plaintiff and the State of Idaho through its Department of Highways is supported by lawful consideration and has been performed in full by the plaintiff herein."

The state having received the full consideration upon its contract, and neither the contract, nor the work performed thereunder, being illegal or in violation of statute, the plaintiff is entitled to payment.

■ The legislature having delegated to the board of highway directors the authority to build and maintain highways and to enter into and perform all lawful contracts for that purpose (I.C. § 40–120), and having appropriated moneys to the board for that purpose (I.C. § 40–128), and there being money available in such appropriation for the payment of plaintiff's claim, and the same having been properly approved and certified to the state auditor, in proper form, and the state auditor having submitted same to the state board of examiners, that board has no power or authority to withhold its approval of the claim, and it is the duty of the state auditor to issue warrant for the payment thereof. Jewett v. Williams, 369 P.2d 590 [1]; Padgett v. Williams, 82 Idaho 114, 350 P.2d 353; Padgett v. Wil-

[1]. Ante, p. 92.

liams, 82 Idaho 28, 348 P.2d 944; Rich v. Williams, 81 Idaho 311, 341 P.2d 432.

It is ordered that writ of mandate issue as prayed.

 Neither the state board of examiners nor the state auditor is liable for costs in actions in which either is involved in his or its official capacity. City of Idaho Falls v. Pfost, 53 Idaho 247, 23 P.2d 245; Chicago, Milwaukee & St. P. Ry. Co. v. Public Utilities Commission, 47 Idaho 346, 275 P. 780; I.C. § 67–2301. The individuals occupying these offices are not liable for costs in the absence of malfeasance. In this case, as appears from the foregoing opinion, the position which they took in rejecting plaintiff's claim was not entirely without reason, but was a debatable one. It therefore appearing that they have acted in the premises in good faith, no costs can be imposed upon them in their individual or personal capacity.

 However, having determined that plaintiff was entitled to payment of its claim in full, and the prevailing party being entitled to its costs, I.C. § 12–107, an injustice would result from a failure to award costs to the plaintiff. In Chastain's, Inc. v. Idaho Tax Commission, 72 Idaho 344, 241 P.2d 167, the court called attention to the fact that costs were expressly authorized to a successful applicant for a writ of mandate, I.C. § 7–312 (or prohibition, I.C. § 7–404). In that case costs were allowed against the state.

Idaho Code § 12–118 provides:

"When the state is a party and costs are awarded against it, they must be paid out of the state treasury, and the state auditor shall draw his warrant therefor on the general fund."

This contemplates allowance of costs against the state. Here the state is a party-defendant by and through the state board of examiners.

Accordingly, it is ordered that the plaintiff recover its costs from the state. Plaintiff is authorized to file in this court, and serve upon opposing counsel, a bill of its costs, both here and in the district court, approved by the district judge as to costs incurred in the district court, including the reporter's transcript fee. Defendants will have the time allowed by rule 40, appellate rules of this court, to file objections thereto. When costs are taxed by this court, its order will issue to the state auditor for the payment thereof.

SMITH, C. J., and KNUDSON, McQUADE and McFADDEN, JJ., concur.