20111

Alfred JACOBS et al., Respondents, v. ASSOCIATION OF INDE-PENDENT COLLEGES AND SCHOOLS (previously known as the United Business School Association), Appellant.

(219 S. E. (2d) 837)

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, and *Sachs, Greenbaum & Tayler,* of Washington, D. C., *for Appellant,* cite:

*Messrs. Thomas M. Patrick, Jr.,* and *John B. Duggan,* of Greenville, *for Respondents,* cite:

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, and *Sachs, Greenbaum & Tayler,* of Washington, D. C., *for Appellant,* in Reply.

Nov. 19, 1975.

GREGORY, Associate Justice:

This is an appeal from the order of the circuit court denying appellant's motion for an order dismissing the action based upon lack of jurisdiction of the South Carolina Courts or in lieu thereof, to quash the return of the summons and complaint. The basic issue is whether appellant had sufficient contacts with this State to sustain the service of process

upon it without "offending traditional notions of fair play and substantial justice."

Appellant, The Association of Independent Colleges and Schools (hereinafter referred to as AICS) is a non-profit corporation chartered under the laws of the District of Columbia. Its principal and sole offices are located in Washington, D. C. It has no employees except in Washington, D. C. and it neither owns nor controls any property outside of Washington, D. C. It has never had any telephone number, bank account, office, or other place of business in South Carolina.

Respondents are former students of Draughon's Business College, Inc. (hereinafter referred to as Draughon's) who have instituted this action as a class action for approximately three hundred (300) students who attended Draughon's after September 3, 1971. They have sued appellant in tort for negligent accreditation. Appellant was served under the provisions of Section 10-424, 1962 Code of Laws, as amended.

Draughon's operated a post high school business college in Greenville, South Carolina for a number of years prior to April, 1973, when it filed for bankruptcy in the Federal District Court. As a result of Draughon's bankruptcy, over 300 students were left as unsecured creditors of the bankrupt school with incomplete educations; with no solvent entity to make any refund for tuition fees paid in advance; and, in many cases, unpaid loan obligations for funds borrowed to pay tuition in advance. These worthless refund claims are in excess of One Hundred and Fifty Thousand and no ($150,000.00) Dollars. The appellant issued its accreditation to Draughon's on or about February, 1971, and continued it through the time when Draughon's filed bankruptcy in April of 1973.

In order for a corporation to be amenable to service of process in this State, such corporation need only have such contacts here so that maintenance of an

action against it will not offend traditional notions of fair play and substantial justice. *Boney v. Trans-State Dredging Co.,* 237 S. C. 54, 115 S. E. (2d) 508 (1960); *Carolina Boat and Plastics Co. v. Glascoat Distributors, Inc.,* 249 S. C. 49, 152 S. E. (2d) 352 (1967); *Peeler v. South Carolina Helicopters, Inc.,* 263 S. C. 487, 211 S. E. (2d) 344 (1975). In *Boney, supra,* this Court established four considerations to be applied in determining whether a foreign corporation had sufficient contacts in the state to confer jurisdiction:

1. the duration of the corporate activity in the state;

2. the character of the corporate acts giving rise to the suit;

3. the circumstances of their commission; and

4. the balancing of the inconvenience to the parties, respectively, in conferring or refusing to confer jurisdiction over the foreign corporation.

In its May, 1973 directory, appellant listed six (6) business schools in South Carolina, including Draughon's, as accredited. AICS's agents come into the State of South Carolina at least once every six (6) years to inspect its currently accredited schools. Appellant's agents have made more frequent inspections in the state in the past several years. This has apparently occurred since AIC's rules require re-inspection when a school is sold or other substantial changes in the school's business occur. At least two (2) such inspections occurred in 1974 at Rutledge Business Colleges in Spartanburg and Greenville. Appellant sent inspection teams to Draughon's once in July, 1970, in connection with its initial application, and a second time in May, 1972, in connection with a special investigation to inspect the student loan refund situation.

The corporate acts of AICS in South Carolina consist of regular, periodic collection of data by two-man inspection teams on inspection visits lasting an average of two days.

This on-the-spot collection of data is an integral part of the accreditation process. Information submitted by the school is verified and impressions and data are sent to Washington, D. C. where it plays an important part in the decision by the Accrediting Commission to grant accreditation.

Although the final decision of whether to grant accreditation is made outside of South Carolina, the accreditation itself is a continuing stamp of approval by AICS in South Carolina. It is a continuous holding out by AICS that a school meets its standards. AICS allows their seal to be used by schools accredited by it in their bulletins and advertising, knowing the public will see it and rely on it. This accreditation is relied on by many students in making their selection of a school to attend. It is also the basis and condition precedent to the making of thousands of dollars of student loans by lending institutions in South Carolina. The inspection visits and the routine allowance of the use of its seal by accredited members are both done by AICS in the ordinary course of conducting its affairs.

AICS is a non-profit organization which charges for its services. It has received significant annual income from the six (6) accredited schools for its accreditation and related services. Appellant requires a fixed annual fee of $50.00 from all accredited institutions, plus an annual fee based on gross receipts with a minimum fee of $225.00, for a total minimum per school of $275.00. The annual fee of Draughon's for 1962 was $850.00. A fee for re-inspection is at least $300.00. There were two (2) inspections in South Carolina in 1974.

As to the relative inconvenience to the parties, to require respondents to go to Washington, D. C. to bring this suit seems to be a far greater inconvenience than to require appellant, who has periodically come into this State, to come here to defend. Virtually all the numerous respondents are located in South Carolina and virtually all objective evidence concerning the alleged tort, including the

recruiting practices, personnel, faculty, policies and procedures of Draughon's is located here. Many of appellant's witnesses are from outside the District of Columbia and they would have to travel regardless of the situs of the trial. While we agree with appellant that jurisdiction cannot be conferred on the grounds of mere convenience, it is well established that an " 'estimate of the inconveniences' which would result to the corporation from trial away from its 'home' or principal place of business is relevant." *International Shoe Co. v. State of Washington*, 326 U. S. 310 at 317, 66 S. Ct. 154 at 158, 90 L. Ed. 95 (1957). *Boney v. Trans-State Dredging Co., supra. Carolina Boat and Plastics Co. v. Glascoat Distributors, Inc., supra.*

(T)he boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has been suggested, whether the activity, which the corporation has seen fit to procure through its agents is a little more or a little less.

Whether due process is satisfied must depend upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it is the purpose of due process to insure. *International Shoe, supra.*

The non-commercial character of AICS and the nature of the service it renders makes much precedent in the cases concerning commercial corporations inappropriate. We must consider the special nature of the corporate activity of AICS and the special structure of activities in accomplishing its goals peculiar to the accrediting organization, in determining what degree of contacts would subject it to suit in this State. Although AICS is not transacting business in the commercial sense, it nevertheless "transacts business" within the meaning of that term in § 10-424 when it conducts activity in promotion of the purposes for which it was organized, whether or not those purposes are for pecuniary gain, and when it carries on transactions constituting a regular, sys-

tematic and continuous course of conduct to accomplish its objectives. *General Conference v. Berkley*, 156 Cal. 466, 105 P. 411 (1909), *Pierce v. Grand Army of the Republic*, 220 Minn. 552, 20 N. W. (2d) 489 (1945).

When AICS grants accreditation, it grants its approval for a period of six years unless it revokes accreditation. Accreditation is a service on which the public does and is intended to rely. When AICS approves a school and permits this approval to be advertised, it is engaging in a continual promotion of the purpose for which it was organized—to inform the public that the member school is a good place to enroll. It is doing its business by informing the public and supervising adherence to its standards by member schools. To say that AICS only does business in Washington, D. C. where it makes the final accreditation decisions is a fiction we cannot accept. Under the totality of these circumstances to allow AICS to insulate itself from suit elsewhere is not required by due process.

Appellant cites *Sterling Farms, Inc. v. Salopian Industries, Ltd.*, Civil No. 74-442, August 20, 1974 (D. Ct. S. C. 1974) to buttress its contention that there is no relationship whatsoever between appellant and respondents that involves the State of South Carolina and for that reason jurisdiction cannot be sustained. *Salopian* was a contract action concerning a British defendant who shipped defective equipment to a resident of Massachusetts. There were no contracts whatever in that case involving South Carolina. The case at hand is thus distinguishable.

*Ford, Bacon and Davis v. Terminal Warehouse, Co.*, 207 Wis. 467, 240 N. W. 796 (1932) and *Aero Service Corp. v. Benson*, 84 Idaho 416, 374 P. (2d) 277 (1962) on which appellant bases its proposition that the conducting of an information gathering operation does not constitute "doing business" are also clearly distinguishable in that they deal with "doing business" for purposes of domestication statutes rather than for purposes of *in*

*personam* jurisdiction. It is well established that the test for the latter requires fewer contacts than the test for the former. *State v. Ford Motor Co.,* 208 S. C. 379, 38 S. E. (2d) 242 (1946).

Appellant seems to put much reliance on the fact that it did not solicit business. As it was pointed out in *Shealy v. Challenger Manufaucturing Co.,* 304 F. (2d) 102 (4th Cir. 1962), solicitation is not a *sine qua non* of jurisdictional power. "If the defendant, like the maker of a better mousetrap, is fortunate enough to get the business without active solicitation, it does not gain immunity from an exercise of jurisdiction by those states in which it engages in substantial activity of a different sort." *Shealy, supra.*

Appellant also relies on *Fontanetta v. American Board of Internal Medicine,* 303 F. Supp. 427 (E.D.N.Y. 1969), aff'd 421 F. (2d) 355 (2d Cir. 1970). There a doctor who flunked his oral examination was suing on the basis of an implied contract to administer the test fairly. The defendant there had no contacts with the forum other than correspondence with doctors seeking certification and making arrangements for the administration of the exams. The court held that the New York aspects of the relationship were minimal and that the doctor's claim was based on what happened in Philadelphia where the test was graded, not in New York where he was tested. The continual accreditation process, the periodic inspection trips by AICS, the regular payment of fees by South Carolina schools, and the element of detrimental reliance induced by appellant by certification already given distinguish the case at bar significantly.

The contacts involved here are considerably more substantial than those of the foreign corporation in *Phillips v. Knapp-Monarch Co.,* 245 S. C. 383, 140 S. E. (2d) 786 (1965), which had no contact with South Carolina other than shipping a solitary coffee brewer to an independent South Carolina merchant and those of the foreign corporation in *Clawson v. Garland,* 37 F. R. D. 324 (D.S.C. 1965),

which conducted one demonstration in this State and shipped two cranes here.

The decision of the trial court should be affirmed unless unsupported by the evidence or influenced by error of law. *Nucor Corp. v. Faneuil Construction,* S. C., 215 S. E. (2d) 634 (decided June 4, 1975). It is apparent from the facts heretofore recited that respondents have sustained their burden of proof that appellant had substantial contacts with this State and that the trial judge in finding jurisdiction reached his conclusion squarely in accordance with our recent decisions.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.