ALLEN, Judge.
We have before us an interlocutory appeal from an order of the lower court denying the jurisdictional motions of appellant, Steel Joist Institute, Inc., the defendant below. The court held that the appellant was “engaged in business” in the State of Florida within the meaning of Section 47.16(1), Florida Statutes, F. S.A., and therefore was amenable to substituted service under the provisions of Section 47.30, Florida Statutes, F.S.A.
The complaint in this action alleged the following facts: Appellee, J. H. Mann, III, Inc., was awarded a contract for the construction of an addition to the Pine Hills Shopping Center, Orange County, Florida. The plans and specifications for the erection of the addition called for certain types of steel joists, which were required to be manufactured by a member of the Steel Joist Institute.
The Mann company then entered into a sub-contract with Florida Steel Corporation, under which Florida Steel agreed, among other things, to supply S-series steel joists that were manufactured and fabricated in accordance with specifications published by Steel Joist Institute. It is alleged that, on or about February 3, 1963, certain of the steel joists furnished by Florida Steel “failed and collapsed” because of faulty construction.
Suit was brought, joining Florida Steel and the Institute as defendants. The trial court asserted its jurisdiction over the person of the Institute, and this appeal was taken. Florida Steel, having no interest in the appeal, asked to be dismissed and does not appear.
At the outset, it must be noted that cases of this kind turn on the peculiar facts and circumstances of each particular case. Mason v. Mason Products Company, Fla. 1953, 67 So.2d 762. “While certain general principles may be said to prevail the application of these principles will be governed by the factual situation presented by a particular record.” Wm. E. Strasser Construction Corp. v. Linn, Fla. 1957, 97 So.2d 458, 459.
Steel Joist Institute, Inc., is a non-profit trade association composed of twenty-seven member companies actively engaged in the fabrication and distribution of open *627 web steel joists. (Florida Steel Corporation was a member of the Institute at the time of its entering into the contract with the Mann company.) _ Member companies can be found in thirteen states across the nation. The Institute is incorporated in the State of Illinois and maintains its principal place of business in the District of Columbia.
The objectives of the Institute as found in its Policy Statement are:
“ * * * to establish methods of design and construction for open web steel joists, to provide test and research data for public dissemination, to assist in the development of appropriate building code regulations, and to publish information relative to the proper use of steel joists in the interest of safety and the public welfare.”
One of the programs adopted by the Institute to help achieve its purposes is the Quality Verification Program. As described in appellee’s complaint, the program is a published and publicized plan of inspection under which joists manufactured by members of the Institute are said to be subject to periodic and unscheduled inspections and testing. The plan is designed to assure specifying authorities and ultimate users that joists bearing the Institute’s label were manufactured in accordance with the rigid standards set by the Institute.
It is upon this program of quality verification that the lower court’s order rests, in that the court felt that the Institute’s causing inspections to be made in Florida, in connection with its advertising program directed to the trade, was “engaging in business” within the purview of Section 47.16. Consequently, the nature of this program must be examined.
A general description of the Quality Verification Program is found in a supplemental affidavit of C. H. Luedeman, managing director of the Institute, filed in support of the Institute’s motion to dismiss. Under the program, a representative of an independent testing laboratory employed by the Institute, each year, made an unscheduled visit to the plants of each member company. The representative, while at a plant, inspected joists under instructions prepared by the Institute’s Engineering Practice Committee. Selection of a joist was also made to be sent to the testing laboratory where physical tests were performed. The results of the tests were evaluated by the Institute’s consulting engineer, and his report was sent from the Institute’s headquarters in Washington, D. C., to the member whose joists had been inspected.
An inspection under this program had been conducted at the Florida Steel Corporation’s plant in Florida on June 6, 1960, April 4, 1961, May 4, 1962, and April 25, 1963. Inspections of another Florida member were made yearly from 1959 to 1962.
The affidavit goes on to state that this program was discontinued June 18, 1963, and that no representative of the testing laboratory or Institute has been in the State of Florida since the April 25, 1963, inspection date noted above. Apparently, this is the basis for the allegation in the affidavit that the Institute does not inspect or test goods in Florida or elsewhere. The determination, however, of whether appellant was “present” in this State, for purposes of service of process, is not influenced by the discontinuance of the program for a period of months before the complaint was filed. The inquiry is directed to whether appellant was “engaged in business” or a “business venture” before and at the time the joists were sold and placed in the building that collapsed.
We find that we are in agreement with the trial judge’s answer to this inquiry, i. e., appellant was “engaged in business” within the purview of the statute.
A non-profit corporation’s business is whatever functions it has been organized to perform. See Weinberg v. Colonial *628 Williamsburg, Inc., 215 F.Supp. 633 (E.D. N.Y.1963). The immediate question becomes: What were the functions for which the Steel Joist Institute was organized? This question is answered by the Institute’s statement of policy, supra. The next question is then: Were any of the functions, for which the corporation was organized, performed within the State of Florida? Our conclusion is yes, in that the Institute’s program of quality verification, performed in this State, was an integral part of the activity in which the Institute was engaged. As such, it constituted activity establishing the required “minimum contact” with the State to subject the appellant to the jurisdiction of the Florida court.
Furthermore, we are of the opinion that the trial judge could have also premised his decision upon what has been deemed the broader provision of Section 47.16, that is, engaged in a “business venture.” State ex rel. Weber v. Register, Fla.1953, 67 So. 2d 619.
In the Register case, the Florida Supreme Court held that an act of out-of-State owners of a Florida grove in listing the grove for sale, amounted to engaging in a “business venture” within the statute. The Court, in its opinion, said:
“Although we do not agree that the listing of the grove property for sale was a ‘transaction or operation connected with or incidental to’ the business in which petitioners were engaged in this State, to wit: the maintenance and operation of a citrus grove, we believe that the allegations of the complaint filed by Mr. Driver demonstrate clearly that the purchase of the property and the subsequent listing of the same for sale amounted to engaging in a ‘business venture’ as contemplated by our statute.
“There is a vast difference between the words ‘a business’ and the words ‘business venture’ as used in Section 47.16, supra. One may engage in a ‘business venture’ without operating, conducting, engaging in or carrying on ‘a business.’ The listing of the grove for sale is proof of the fact that the purchase thereof was a ‘business venture.’ Moreover, the act of listing the property for sale amounted to a transaction ‘connected with or incidental to’ the ‘business venture’ which the Webers initiated when they acquired the grove.”
Subsequently, at page 621, the Supreme Court quoted from International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057:
“ ‘ * * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend “traditional notions of fair play and substantial justice.” ’ ”
We held in Oxley v. Zmistowski, Fla. App.1961, 128 So.2d 186, that nonresident defendants, to whom the plaintiff had conveyed land within Florida as security for a usurious loan, which could, under an option contract, be repaid with over 100% interest in the form of repurchase of land, were engaged in a business venture in the State sufficient to permit personal jurisdiction over them as nonresidents through service on Secretary of State, under the provisions of Florida Statutes, §§ 47.16 and 47.30, F.S.A.
In the Oxley case we quoted from the University of Miami Law Review, Vol. XIII, No. 2, page 205, as follows:
“ ‘The problem must be examined in the light of its historical development. The Supreme Court in 1877, in the case of Pennoyer v. Neff [95 U.S. 714, 24 L.Ed. 565], formulated the rule that absent a voluntary appearance or consent to be served, the due process clause of the fourteenth amendment re *629 quired personal service of a nonresident individual defendant within the forum to give a state jurisdiction to render as in personam judgment. Thus was enunciated the requirement of “presence” for individuals which later was applied to foreign corporations. The failure of the Court to clearly limit the requirement of physical presence to cases where the nonresident had no other contacts with the state of the forum led many legislatures to enact substituted service statutes to circumvent the supposed “due process” requirement of the decision. Subsequent decisions of the Court engrafted many limitations upon the “presence” test, culminating in its abandonment in International Shoe Co. v. [State of] Washington [326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95], Having abandoned “presence” as essential to “due process” in acquiring jurisdiction in actions in personam, the more nebulous test of “minimum contacts” was advanced. “Minimum contact” was reached in McGee v. International Life Ins. Co. [355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223], decided by the Court in 1957. In the words of Justice Black, “It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that state.” (Emphasis added.) “Due process” is thus the key which opens the jurisdictional lock of a state as to a nonresident defendant.’ ”
Our sister Court of Appeal of the Third District in Continental Copper & Steel Industries v. “Red” Cornelius, Fla.App.1958, 104 So.2d 40, was confronted with the following factual situation: A Florida electrical contractor, through a Florida wholesale dealer, ordered and purchased electrical •cable from a nonresident manufacturer of such cable. Suit was brought against both the manufacturer and the wholesaler for the sale of defective cable. The Third District Court concluded that under these facts the nonresident manufacturer was engaged in a business venture within the State.
In Woodring v. Crown Engineering Co., Fla.App.1962, 141 So.2d 816, this court held that the Crown Engineering Co., the defendant, was engaged in a business venture in Florida on these facts: Plaintiff alleged that he had been employed as a national sales manager by Crown Engineering Co., the defendant, at its headquarters in Billings, Montana. Plaintiff had no area designated within which he was to sell the products of Crown Engineering, but the company was very interested in participating in the phenomenal growth of building in Florida, and was very interested in having its product, a certain equipment for the manufacture of concrete tile, sold within the State. Plaintiff advertised for sales representatives for the defendant corporation in Florida, and, in his capacity as an employee of the defendant, promoted the sale of Crown’s machinery by advertising in the newspapers in St. Peters-burg, Florida. Plaintiff further alleged that he received inquiries from certain persons requesting information and interviews, and that he met these persons and subsequently made sales of machinery to several of them.
The defendant countered with allegations that, although the plaintiff may have been domiciled in Florida, the records of Crown Engineering Co. disclosed that 95% of his time and efforts were in Texas and Illinois, and, in fact, only in Texas, Illinois, Michigan and Missouri, did the plaintiff ever conclude any business on behalf of Crown Engineering Co.
We held that the Crown Engineering Co. had taken sufficient steps within the purview of Chapter 47, Fla.Stats., F.S.A., to establish a business venture in the State of Florida, and that the defendant was subject to being brought into the jurisdiction of the State under compliance with § 47.16 and § 47.30, Fla.Stats., F.S.A.
We conclude that the lower court, under the authority of the above cases, should be affirmed as there was sufficient evidence *630 before it to determine as a fact that the appellant, defendant below, was “engaged in business” or in a “business venture” in Florida and subject to the jurisdiction of the Florida courts.
Affirmed.
SMITH, C. J., and ANDREWS, J., concur.