[No. 44785. En Banc. January 26, 1978.]

ROBERT H. LEWIS, *Appellant,* v. CURRY COLLEGE, *Respondent.*

*Dan Austad,* for appellant.

*Robert J. Walerius* (of *Moriarty, Long, Mikkelborg & Broz*), for respondent.

Rosellini, J.—The Superior Court dismissed this action, which was brought against a private, nonprofit institution of higher learning located in the state of Massachusetts. Service was had upon the college in Massachusetts. The lower court, after considering affidavits, held that the college had not subjected itself to the jurisdiction of the courts of this state under the long–arm statute, RCW 4.28.185.

The facts are not in dispute. The appellant is a Washington resident who has a learning disability, known as dyslexia. He was a student at Curry College for a portion of the academic year 1974–75. The college has never registered to do business in this state and has no agents or operations here. The college has a small student body of about 800 students, most of whom are from eastern states. In its entire 100–year history, the college has had only one student from the state of Washington, that student being the appellant.

In 1970, a part–time faculty member at Curry College visited the state of Washington and made a speech to a group interested in learning disabilities. She was not authorized to speak as an agent of the college, and, so far as the record shows, did not purport to do so. In the course of the speech she told the group that Curry College had a program for students with dyslexia. Jerry Winger, an employee of the Seattle Public School District, heard the teacher's speech. He had already had some knowledge of

this program, which he had gleaned from reading articles in education publications about it. He requested the college to send him more information about the program and later recommended to the appellant that he contact the college.

The appellant wrote to the college requesting information. The information which he received in response to this request included a catalogue and copies of articles which had been written about the dyslexia program. The record does not disclose the author or authors of these articles. Examples of similar articles, which the appellant had found or been given as a result of research, were attached to his affidavit. They reported the fact that the college had such a program, that the program was innovative, and that it was helping students with learning disabilities. The articles did not solicit enrollment in the program.

In November 1972, the appellant formally applied for admission to the college. He was accepted and was enrolled in August 1974. His expenses were to be paid through a national defense loan, a grant arranged by the college, and a grant from the Washington State Department of Social and Health Services, made with the cooperation of the college.

Before many months had passed, the appellant expressed dissatisfaction with the learning disability program. He was dismissed before the end of the school year.

In this action he alleged, in substance, that he was induced to enroll in the school by false representations and that the school was guilty of a breach of contract in failing to provide a satisfactory program of assistance for persons with his learning disability. He asked for damages in the amount of $25,000 for mental suffering, frustration, and loss of time, and for the return of $256.36, the amount which he owed on the national defense loan.

To support his theory that the courts of this state have jurisdiction over the respondent college, the appellant relies upon the following provisions of RCW 4.28.185:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of

the acts in this section enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state;

(b) The commission of a tortious act within this state;

■ In *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945), the United States Supreme Court held that, in order to subject a nonresident to jurisdiction over his person, if he is not present within the territory of the forum, it must appear that he has had certain minimum contacts with it, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. The court went on to say that due process requires that, before a binding in personam judgment can be entered, the defendant must have had some contacts, ties, or relations with the state. This requirement was further clarified in the case of *Hanson v. Denckla,* 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958), wherein the court said that "minimal contacts" are required, that it is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.

In implementing this requirement of the federal and state constitutions, we have laid down the following rules:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *Deutsch v. West Coast*

*Mach. Co.,* 80 Wn.2d 707, 497 P.2d 1311 (1972); *Bowen v. Bateman,* 76 Wn.2d 567, 458 P.2d 269 (1969); *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963).

While the requirements of minimal contacts were not discussed in *Golden Gate Hop Ranch, Inc. 'v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 403 P.2d 351 (1965), they were present in that case, as noted in *Oliver v. American Motors Corp.,* 70 Wn.2d 875, 425 P.2d 647 (1967).

Applying these criteria to the facts before us in this case, we find no showing that the respondent college purposefully did any act or consummated any transaction in this state. While it supplied information to residents and institutions of this state, it did so only upon request. There is no showing that it engaged in advertising or solicitation of students here. The complaint shows that the appellant was indeed advised to attend the college, but the advice came from a Washington resident not connected in any way with the college. The contract of enrollment was entered into in Massachusetts and the institution's services were performed there.

Cases cited by the appellant in which nonresidents induced Washington residents to enter into business relations with them, by telephone or mail, all involved the active solicitation of such engagements and/or transactions consummated in this state. In *Quigley v. Spano Crane Sales & Serv., Inc.,* 70 Wn.2d 198, 422 P.2d 512 (1967), the defendant California corporation sold a crane to the plaintiff in response to a telephone order. The crane was delivered and used in Washington, and title was passed here. The company had sent representatives into the state to solicit business and service cranes and had mailed advertising literature to prospective customers.

In *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.,* 71 Wn.2d 679, 684, 430 P.2d 600 (1967), an insurance transaction initiated by brokers in California by telephone, which was partially consummated in Washington, was held sufficient to satisfy the minimal contacts

requirement. This court in that case drew attention to the fact

> that large segments of commerce, finance, manufacturing and agriculture inevitably seek out a connection with or link to customers, consumers, user, fabricators, processors, or subcontractors in other states who intend or contemplate that the product, process or article of commerce, manufacturing or agriculture shall be consumed, used or employed in states other than the place of origin or beginning.

In *Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn.2d 823, 435 P.2d 626 (1967), the nonresident defendant had obtained a license to sell fireworks in this state and shipped fireworks here for resale. In *Bowen v. Bateman, supra,* the nonresident defendant advertised Brazilian land for sale in Washington newspapers, mailed brochures to residents of this state, contracted with a Washingtonian to sell some of the land here and remit portions of the purchase price to the defendant, and arranged for payment to be made through a Washington bank. And in *Toulouse v. Swanson,* 73 Wn.2d 331, 438 P.2d 578 (1968), a nonresident defendant who engaged a Washington lawyer to represent him in local litigation was held to have sufficient contacts with the state to justify the exercise of jurisdiction in a suit for recovery of attorney fees. The other cases cited, *Harrison v. Puga,* 4 Wn. App. 52, 480 P.2d 247, 46 A.L.R.3d 415 (1971), *Handley v. Franchise Marketing Servs., Inc.,* 9 Wn. App. 40, 510 P.2d 673 (1973), and *State v. Reader's Digest Ass'n, Inc.,* 81 Wn.2d 259, 501 P.2d 290 (1972), all involved advertising and solicitation of customers or business in this state.

The appellant also cites cases involving application of the long–arm statute to nonresident schools selling correspondence courses to the residents of the forum. These cases proceeded upon the theory that such a school has its situs not only where the teachers and offices are located, but also where the students are located. We are not here concerned with the sale of a correspondence course.

No case cited has suggested that by publishing its catalogue and material describing its courses and programs, and furnishing these publications to persons or institutions requesting them, a nonprofit institution of learning, located exclusively in one state, subjects itself to the reach of the long–arm statute. Here, the respondent did nothing to invoke the protection of the laws of this state; and, as we have noted, it did not advertise for students or send its agents into the state to solicit enrollment. It carried on no activities here. The requirement of minimal contacts was not met.

This being the case, we need not consider the impact of such factors as convenience of witnesses and hardship to the respondent.

The judgment is affirmed.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.