[No. 9782–2–I. Division One. December 8, 1982.]

MABELLE OERTEL, *Respondent,* v. BRADFORD TRUST COMPANY, *as Trustee, Appellant.*

*Jeffers, Danielson, Foreman, Sonn & Aylward, P.S.,* and *J. Patrick Aylward,* for appellant.

*McCush, Kingsbury, O'Connor, Ludwigson, Thompson & Hayes* and *Craig Hayes,* for respondent.

SCHOLFIELD, J.—Defendant Bradford Trust Company

(Bradford) appeals a summary judgment[1] in favor of plaintiff Mabelle Oertel in an action to recover the value of certain bonds owned by and stolen from Oertel and redeemed by Bradford over a forged endorsement. We dismiss for lack of jurisdiction.

Bradford is a trust company organized under the laws of New York with its principal place of business in New York. Bradford served as trustee for a unit investment trust (First Trust of Insured Municipal Bonds, Series 33) registered in New York. The sponsor of the issue was Wauterlek & Brown, Inc., a Delaware corporation. The securities were sold nationally by Wauterlek & Brown and other underwriters, including Foster & Marshall, Inc., of Seattle. Purchasers of fund units received registered certificates of ownership executed by the sponsor and Bradford as trustee.

In May 1978, Oertel purchased 70 units of First Trust through Foster & Marshall. Her certificate of ownership was stolen sometime prior to December 1979. The certificate was negotiated through a Vancouver, British Columbia, brokerage house, and Bradford issued a check for $60,477.90, dated December 24, 1979, which was paid January 4, 1980.

In December, Oertel's son–in–law, Wesley Matthews, came to Washington to organize her affairs and place her in a nursing home. An affidavit asserts that Oertel had expressed suspicions that a friend of her granddaughter was stealing from her. When her son–in–law could not find her certificate, he contacted her broker at Foster & Marshall. The broker in turn called Bradford.

Oertel's broker's affidavit in support of her motion for summary judgment states this call was made "[i]n December of 1979." Oertel's attorney averred that the call was made "[o]n or about the 21st of December." The broker advised Bradford of a probable theft when Bradford informed him that Oertel's bonds had been sold through a

---

[1]Judge Kurtz signed the judgment in favor of Oertel, but another judge denied defendant's motion to dismiss for lack of personal jurisdiction.

Vancouver brokerage house and a check for $60,477.90 issued to redeem them. An affidavit of the Bradford employee responsible for First Trust correspondence states that Oertel's broker called "on or about January 7, 1980", but, in any event, after Bradford's check cleared.

Bradford contends the trial judge erred by denying its motion to dismiss for lack of personal jurisdiction. Oertel asserts that personal jurisdiction was properly exercised pursuant to RCW 4.28.185(1)(a) in that Bradford engaged in the transaction of business within this state. We do not agree that Bradford transacted business in Washington.

■■ Washington courts may exercise personal jurisdiction over a nonresident defendant or foreign corporation pursuant to RCW 4.28.185(1)(a) under the following circumstances:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Lewis v. Curry College*, 89 Wn.2d 565, 568, 573 P.2d 1312 (1978). *Accord, Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 381 P.2d 245 (1963).

Bradford Trust Company performs the duties of a trustee and transfer agent in its office in New York. Bradford maintains no office in Washington. It does not advertise its services in Washington, does not solicit business in Washington and did not participate in the marketing of the securities involved here.

Bradford's role was purely administerial as an authenticating trustee and transfer agent. It kept a register of certificate owners and processed requests for changes of

ownership or redemption. It also rendered annual financial reports to certificate owners containing information relating to the financial status of the bonds. As trustee, it was also obligated to respond to relevant requests for information. Under the facts of this case, Bradford would have no connection whatsoever with Washington, unless a resident of this state purchases securities from another for whom Bradford acts as authenticating trustee.

The case of *Hanson v. Denckla,* 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958), in which the Supreme Court held that Florida courts could not exercise personal jurisdiction over a Delaware trust company, presents facts similar to those here. The Delaware trust had no office in Florida, administered no trust assets in Florida, and neither solicited nor transacted any business in Florida. The trust agreement, whose validity was contested, was executed by a Pennsylvania resident in Delaware and thus had no connection with Florida. Florida acquired no relationship with the agreement until the settlor subsequently moved to Florida. The settlor transacted several matters of trust administration while a resident of Florida, but the trustee performed no acts in Florida.

Here, Bradford's sole connection with Washington was the issuance of a certificate in New York to an owner who was a Washington resident. The purely administerial duties performed by the trustee—providing annual reports to certificate owners, responding to requests for relevant information about the financial status of the trust, and acting as a transfer agent—differ in no material degree from the duties performed by the trustee in *Hanson v. Denckla.*

The following language from *Hanson v. Denckla,* referring to restrictions on the personal jurisdiction of state courts, is apposite:

> Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be

called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him. See *International Shoe Co. v. Washington,* 326 U. S. 310, 319 [90 L. Ed. 95, 103, 66 S. Ct. 154, 161 A.L.R. 1057 (1945)].

We fail to find such contacts in the circumstances of this case. The defendant trust company has no office in Florida, and transacts no business there. None of the trust assets has ever been held or administered in Florida, and the record discloses no solicitation of business in that State either in person or by mail. . . .

. . .

. . . The application of that rule [that there be "minimal" contacts within the forum state] will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla, supra* at 251–53. *Hanson v. Denckla* is relied upon in *Tyee Constr. Co. v. Dulien Steel Prods., Inc., supra,* and *Lewis v. Curry College, supra,* both of which are cases in which personal jurisdiction was declined on reasoning consistent with *Hanson v. Denckla.* We conclude that the activities of Bradford do not constitute the transaction of business in Washington.

Oertel alternatively asserts that jurisdiction may be premised upon RCW 4.28.185(1)(b), arguing that Bradford engaged in the commission of a tortious act (conversion) within this state. We do not agree.

Oertel's theory is that, although Bradford's alleged tortious act originated outside Washington, its impact or damage occurred within Washington and therefore a tortious act was committed within Washington for purposes of RCW 4.28.185(1)(b). Oertel cites *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 403 P.2d 351 (1965), in support.

In *Nixon v. Cohn,* 62 Wn.2d 987, 385 P.2d 305 (1963), our Supreme Court accepted the reasoning of *Gray*

*v. American Radiator & Standard Sanitary Corp.,* 22 Ill. 2d 432, 176 N.E.2d 761 (1961), and the Restatement of Conflict of Laws § 377 (1934) that "[t]he place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place." In *Nixon,* the last event necessary for plaintiffs' cause of action was their being hurled from defendant's amusement ride with resulting injuries, and this event occurred in Washington. In *Golden Gate Hop Ranch,* which applies the test stated in *Nixon,* the last event necessary for plaintiff's cause of action was the damaging of its hop plants and lands by defendant's chemical, which event occurred in Yakima County, Washington.

Here, both parties agree that any conversion of Oertel's property by Bradford occurred in New York. Oertel's cause of action, if any, was complete after Bradford redeemed the securities involved, issued its check, and paid that check. None of these events occurred in Washington. If a refusal to honor a request by Oertel for payment of the value of the bonds to her was necessary to complete the cause of action, that act occurred in New York. It was not necessary that any additional event take place in Washington.

The sole connection between the alleged tort which occurred wholly outside Washington and Oertel was that Oertel was the person who suffered the loss. Applying Oertel's theory, if the owner of the hop ranch involved in the *Golden Gate Hop Ranch* case had been a resident of Arizona, Arizona could assert jurisdiction over the defendant merely by virtue of the fact that the plaintiff was a resident of Arizona, and therefore suffered the financial impact in Arizona from the damage done to his hop ranch in Washington. We conclude that the "commission of a tortious act" in Washington is not established merely by showing that a resident of Washington suffered a loss. RCW 4.28.185(1)(b) does not apply here.

Our resolution of the jurisdiction issue is dispositive of this appeal. We, therefore, will not address the summary

338

judgment issue. This case is dismissed for lack of jurisdiction.

DURHAM, A.C.J., and RINGOLD, J., concur.

Reconsideration denied February 14, 1983.