NEIL G. GALATZ and ELAINE GALATZ, Petitioners, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, Respondent.

No. 14015

July 3, 1984                                                    683 P.2d 26

---

*Galatz, Earl & Biggar,* Las Vegas, for Petitioners.

*Jones, Jones, Bell, Close & Brown,* and *Kenneth A. Woloson,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This original petition for a writ of mandamus challenges an order of the district court quashing service of a summons and

complaint on the American Horse Shows Association (hereinafter "AHSA"), the real party in interest.

Petitioners are Nevada residents and are members of AHSA, a non-profit membership corporation with offices in New York. AHSA holds itself out as a worldwide organization for the benefit of horse enthusiasts. Its membership includes individual horsemen and horsewomen, and "recognized horse shows" that are conducted in accordance with AHSA's rules. AHSA undertakes to promote horse show competition through various means. In May of 1981, a horse show entitled the Morgan Classic Royale was held in California. The show was recognized by AHSA and was operated under AHSA's rules. Petitioners entered their Morgan Stallion in the horse show; the horse won first place in its class. The animal was subsequently disqualified, however, and the award was withdrawn due to alleged rule violations. Petitioners immediately lodged a protest and sought a hearing before the show committee. A hearing was not granted.

After returning to Nevada, the petitioners sought review of the show committee's actions by writing to AHSA's Hearing Committee in New York. The Hearing Committee subsequently met and summarily denied petitioners' request for a hearing, on the ground that the controversy involved a "nonappealable matter."

Thereafter, in September of 1981, the petitioners filed a complaint in district court against AHSA. The complaint alleged that AHSA had violated its constitution and internal rules by failing to provide petitioners with a hearing; by failing to rule upon the specific items contained in their protest; and by improperly considering certain evidence in opposition to their protest without providing them an opportunity to respond. Petitioners sought recovery of their transportation, food and lodging expenses incurred in attending the California show, and sought a return of the first place prize. Additionally, they requested an award of damages to compensate them for the humiliation and embarrassment sustained as a result of the horse's disqualification, and for the loss to the horse's reputation as a performance and breeding stallion.

In response, AHSA moved to quash service of the summons and complaint, contending that it lacked sufficient contacts with Nevada to support the exercise of personal jurisdiction and that the petitioners' cause of action against AHSA did not arise from any of its activities within Nevada. The district court granted the motion to quash, and this petition followed.

Service of process upon AHSA was purportedly made pursuant to our long-arm statute, NRS 14.065. Under NRS

14.065(2)(a), an out-of-state defendant submits to the jurisdiction of Nevada courts as to any cause of action which arises from the transaction of business within this state.[1] This court has previously held that the broad language used in the long-arm statute discloses a legislative intention to reach the outer limits of federal constitutional due process. *See* Certain-Teed Prods. v. District Court, 87 Nev. 18, 23, 479 P.2d 781, 784-85 (1971).

In the present case, AHSA contends that it has not transacted business in Nevada because it has no office or place of business in Nevada, and has not sold any products, provided any services for profit, or conducted any business in Nevada such as to invoke the benefits and protections of our laws. We disagree. "A non-profit corporation's business is whatever functions it has been organized to perform." Steel Joist Institute, Inc. v. J. H. Mann, III, Inc., 171 So.2d 625, 627 (Fla.Dist.Ct.App. 1965). Thus, a non-profit corporation, such as AHSA, "transacts business" within the meaning of NRS 14.065(2)(a) when it performs any of the functions for which it was organized within the State of Nevada. *Id.* According to AHSA's constitution, AHSA was organized:

> (a) To serve and promote the best interests of Recognized Shows, Combined Training Events, Dressage Competitions, Driving Competitions and of the Exhibitors who participate in them.
> (b) To make adequate and fair rules governing competitions and to enforce them for the common benefit.
> (c) To license Judges, Stewards, and Technical Delegates.
> . . . .
> (e) To adjudicate questions of violation of the rules and to inflict penalties therefor in accordance with the rules.
> . . . .
> (i) To educate and inform the public by publishing a newspaper, magazine, rule book, other educational pamphlets on the various phases of equestrian sport.

---

[1]NRS 14.065(2) provides in pertinent part:

> Any person who . . . does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state as to any cause of action which arises from the doing of such acts:
> (a) Transacting any business . . . within this state;
> . . . .

In 1983, the Nevada Legislature amended NRS 14.065(2); the statute was not changed in any material way.

. . . .
(k) To promote the interest of horse and pony breeding.
. . . .
(m) To further the art of riding and to encourage horse-mastership and the welfare of horses and ponies.
. . . .
(o) To protect the welfare of horses insofar as the Association's finances will permit by conducting tests for narcotics and inspections for cruelty to animals.
. . . .
(q) Otherwise to assist in connection with the exhibition of horses insofar as the Association's facilities and finances permit.

Our review of the record indicates that many of these very objectives or functions were performed in Nevada. For example, in 1981, AHSA had 278 members in Nevada; AHSA collected $6950 in dues from those Nevada members and collected $21,424 from participating nonmembers. Further, AHSA had seven registered judges and seven certified stewards residing in Nevada, and recognized 24 horse shows held in Nevada. AHSA also mailed membership-related materials into Nevada, as well as prize lists, premium lists, the "Horseshow Magazine," AHSA's 1981 rule book, amateur cards, entry blanks, membershp applications, and advertisements promoting AHSA. Finally, AHSA apparently selected and paid for veterinarians to test for drugs at five Nevada horse shows. Thus, we conclude, based on these activities and contacts, that AHSA was "transacting business" in Nevada within the meaning of NRS 14.065(2)(a).

AHSA also contends that the petitioners' cause of action against it does not arise from AHSA's activities within Nevada. *See* NRS 14.065(2)(a) and (3); Shapiro v. Pavlikowski, 98 Nev. 548, 654 P.2d 1030 (1982). In particular, AHSA argues that petitioners' cause of action arose from an "alleged incident occurring outside the State of Nevada in California, at a horse show which was merely recognized by the AHSA," and that the "conduct, management and control of that independent horse show . . . rested solely with such show and not with the AHSA." The complaint filed below against AHSA, however, seeks recovery for AHSA's alleged breach of its constitution and rules by failing to provide the petitioners with the means of redress authorized by AHSA's rules. The constitution and rules promulgated by AHSA expressly assure its members of the fairness of the rules governing horse show competitions, and assure that questions of the violation of those rules will be

adjudicated. Even the AHSA membership application states that members "are assured the highest degree of fairness and equality through AHSA's active committee programs . . . and [of] the right to appeal to the Association's Hearing Committee." AHSA solicits members, such as the petitioners, for its organization in Nevada; presumably those members join the AHSA in reliance upon its constitution and rules. Thus, the cause of action does appear to arise from AHSA's activities in Nevada. Significantly, petitioners allege that they were induced to attend the California horse show through material sent to them in Nevada by AHSA. Further, they allege that they attended this horse show in reliance upon AHSA's assurances that the show was recognized by AHSA and would be governed by AHSA rules. Thus, although the cause of action may have come to fruition in California, where their horse was disqualified, or in New York, where AHSA's Hearing Committee denied their request for a hearing, we conclude that it nevertheless arises from and relates to AHSA's activities in Nevada. *See, e.g.,* Higgins v. American Society of Clinical Pathologists, 227 A.2d 712 (N.J.Super.Ct.App.Div. 1967) (personal jurisdiction over nonresident nonprofit corporation upheld), *rev'd on other grounds,* 238 A.2d 665 (1968).

Finally, based on the foregoing, we conclude that AHSA has a substantial enough connection with Nevada to render the exercise of *in personam* jurisdiction over the association reasonable and not offensive to "traditional notions of fair play and substantial justice." *See* Certain-Teed Prods. v. District Court, 87 Nev. at 23, 479 P.2d at 784. AHSA's actions of encouraging, promoting and soliciting members in Nevada, coupled with the other activities and contacts mentioned above, are such that AHSA should have reasonably anticipated that it might be subject to litigation in this state. *See* World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The district court therefore erred in quashing service of process upon AHSA.

For the reasons set forth above, a writ of mandamus shall issue requiring the district court to accept personal jurisdiction over AHSA in the proceedings below.